IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDON DONYA HUGHES, | § | |
| Petitioner, | § § § | |
| V. | § § | No. 3:18-cv-2741-C-BN |
| DIRECTOR, TDCJ-CID, | § § § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

"A jury convicted Brandon Donya Hughes of murder and assessed punishment, enhanced by a prior felony conviction, at life imprisonment." *Hughes v. State*, No. 05-15-01027-CR, 2016 WL 335688, at *1 (Tex. App. – Dallas Jan. 27, 2016, pet. ref'd) (citation omitted), *aff'g State v. Hughes*, No. F14-75983-S (282d Jud. Dist. Ct., Dallas Cnty., Tex.).

Represented by counsel, Hughes now asserts, through an application for a writ of habeas corpus under 28 U.S.C. § 2254, that the Texas Court of Criminal Appeals (the CCA) unreasonable adjudicated three claims that his then counsel violated Hughes's Sixth Amendment right to effective assistance as to the presentment of evidence at his trial, *see* Dkt. Nos. 1 & 2, claims that the CCA denied without written order, *see Ex parte Hughes*, WR-87,656-01 (Tex. Crim. App. Sept. 26, 2018).

The State responded. *See* Dkt. No. 12. Hughes replied and requested an evidentiary hearing. *See* Dkt. No. 14. He then moved to supplement the state court record, *see* Dkt. No. 15, a motion the State objected to in part, *see* Dkt. No. 16. And,

after Senior United States District Judge Sam R. Cummings referred Hughes's Section 2254 application to the undersigned United States magistrate judge for pretrial management, the Court granted the motion to supplement in part, *see Hughes v. Davis*, No. 3:18-cv-2741-C-BN, 2019 WL 4038314 (N.D. Tex. Aug. 27, 2019) [Dkt. No. 19].

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny Hughes's request for an evidentiary hearing and deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

This is because, "[u]nder AEDPA, state courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020) (per curiam). So, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute therefore "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court," *Shinn*, 141 S. Ct. at 520 (citation omitted). And, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Further, "[u]nder § 2254(d)," the reasonableness of the state court decision – not whether it is correct – "is '"the only question that matters."'" *Id.* at 526 (quoting *Richter*, 562 U.S. at 102); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA

on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"). And nothing "in AEDPA or [the Supreme] Court's precedents permit[s] reduced deference to merits decisions of lower state courts." *Shinn*, 141 S. Ct. at 524 n.2 (citing 28 U.S.C. § 2254).

Starting with Section 2254(d)(1), a state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

As noted above, "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation

of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher

threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination.… In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion

from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

### Analysis

The Court reviews the merits of properly exhausted ineffective-of-assistance (IAC) claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good

enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland*

asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."); *cf. Shinn*, 141 S. Ct. at 525 ("recogniz[ing] the special importance of the AEDPA framework in cases involving *Strickland* claims," since "[i]neffective-assistance claims can function 'as a way to escape rules of waiver

and forfeiture,' and they can drag federal courts into resolving questions of state law" (quoting *Richter*, 562 U.S. at 105)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted).

In sum, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See Richter*, 562 U.S. at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was

The CCA denied Hughes's three IAC claims without written order. But this Court's review under Section 2254 turns on the CCA's decision to deny each IAC claim, not its stated reasons (or lack thereof). *See Richter*, 562 U.S. at 98; *Neal*, 286 F.3d at 246; *Pondexter*, 346 F.3d at 148; *Evans*, 875 F.3d at 216 n.4. And the CCA's denial without written order does not allow this Court to ignore the state trial court's detailed factual findings as to these claims. *See* Dkt. No. 11-3 at 45-61.

"Unlike § 2254(d), no adjudication on the merits is needed for § 2254(e)(1) to apply. And by § 2254(e)(1)'s terms, it applies to factual determinations 'made by a State court,' making no distinction between trial and appellate courts." *Murphy v. Davis*, 901 F.3d 578, 595 (5th Cir. 2018) (citing *Craker v. Procunier*, 756 F.2d 1212, 1213-14 (5th Cir. 1985)).

"[A] presumption of correctness attaches to a state trial court's factual findings 'even if the state appellate court reached a different legal conclusion when applying the law to those facts.'" *Id.* (quoting *Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008)). But state "trial courts' findings do not survive an appellate court's review

---

'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

'where they were neither adopted nor incorporated into the appellate court's peremptory denial of relief, but instead were directly inconsistent with the appellate court's decision.'" *Id.* (quoting *Williams*, 551 F.3d at 358 (citing, in turn, *Micheaux v. Collins*, 944 F.2d 231, 232 (5th Cir. 1991) (en banc) (per curiam))); *see also id.* at 596 ("Neither *Williams* nor any of [this circuit's] caselaw indicates that an appellate court's failure to consider an issue makes its ruling 'directly inconsistent' with the trial court's relevant finding…. [And] inconsistency is particularly difficult to infer" where the CCA does "not state which factual findings it based its dismissal upon…. [That said, *Williams*] does not say that the appellate court must apply law to a set of facts for those facts to survive.").

> Accordingly, all the state trial court's express factual findings are owed a presumption of correctness, a presumption [Hughes] may rebut only with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Not only that, this presumption "also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez*, 274 F.3d at 948 n.11. This standard "is demanding but not insatiable." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

*Id.* at 597 (citation modified).

For the following reasons, Hughes has not provided clear and convincing evidence to rebut the correctness of the state trial court's findings of fact under Section 2254(e)(1) and has not shown, under Section 2254(d), that the CCA's denial of his IAC's claims was unreasonable. Accordingly, the Court need not grant Hughes an evidentiary hearing. *Cf. Smith v. Cain*, 708 F.3d 628, 634-35 (5th Cir. 2013) ("We hold that *Pinholster*'s restriction does not bar the federal evidentiary hearing conducted in this case because the district court first concluded, solely on the basis of the state court record, that the state courts committed legal error, as required under

28 U.S.C. § 2254(d)(1), through the state courts's 'unreasonable application of, clearly established Federal law.' Thus, the evidentiary hearing was committed to the district court's discretion, subject to section 2254(e)(2).").

Hughes first asserts that his trial counsel was constitutionally ineffective by not presenting evidence to the jury that he suffered from seizures because, Hughes argues, had counsel done so, this evidence would have shown that Hughes lacked the required mental state to commit murder.

Considering this claim, the state trial court obtained an affidavit from trial counsel, who testified that, "[s]imply put, I had no evidence that [Hughes] was suffering from a seizure at the time of the shooting. Likewise, the evidence was overwhelming that he shot the victim and was under the influence of drugs when he shot the victim." Dkt. No. 11-3 at 61. The state trial court then found that Hughes's trial counsel knew of Hughes's history of seizures but "that there was no evidence that [Hughes] was experiencing a seizure or had recently suffered a seizure at the time of the offense (other than [Hughes's] self-serving statements)"; that trial counsel "attempted to elicit testimony regarding [Hughes's] seizures to negate the culpable mental state"; that Hughes's "proffered expert … had no knowledge that [Hughes] suffered a seizure at or near the time of the offense. Nor did she offer testimony that the shooting could have been a result of [Hughes] suffering a seizure." *Id.* at 50-51. The trial court further found that Hughes's "medical records show a history of possible seizures that appear to be induced by his use of illegal drugs including PCP and K2"; that Hughes "was not taking anti-seizure medication at the time of the

shooting"; and that his "medical records do not support his claim that he suffered a seizure at the time of the offense." *Id.* at 51.

Given these findings, Hughes has not shown that the CCA's denial of this IAC claim was unreasonable. *See, e.g., Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)).

Hughes next argues that his counsel's alleged failure to seek a hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as to the prosecution's gang expert at the punishment phase amounts to a Sixth Amendment violation. But his counsel did raise objections as to this expert's testimony, and a hearing was conducted. *See* Dkt. No. 11-3 at 61 ("Although I did not specifically raise '*Daubert*,' I did request a hearing regarding his testimony, his knowledge of [the] defendant, and objected to his testimony on several grounds.").

And the state trial court found "that [a] hearing was held to determine the admissibility of [the expert's] testimony"; "that the Court and parties were informed of what [he] would testify to: his opinion of what [Hughes's] tattoos likely meant"; that "[t]he Court and the parties were also informed that [the expert] had no knowledge of [Hughes's] actual involvement or membership in a gang and that he would not testify to such"; that counsel "objected to the State's evidence on essentially the same grounds that [Hughes] asserts in his [state habeas] application," "argu[ing] it was unfairly prejudicial"; and "that [Texas law] allows for the admission of evidence at punishment on any issue the court deems relevant to sentencing, including his character. Gang membership is admissible as it is relevant to character. The Court is

not aware of any authority requiring that the evidence of gang involvement be recent." *Id.* at 52-53.

These findings show that the CCA's denial of this IAC claim was also not unreasonable.

Hughes finally argues that his counsel was constitutionally ineffective because he failed to present evidence (from, for example, Hughes's mother) establishing (1) that Hughes's gang membership ended many years before the murder and (2) the non-gang significance of his tattoos. But trial counsel testified in the state habeas proceeding that the recency of Hughes's gang involvement "was addressed thoroughly in cross examination. Detective Nelson undeniably stated that he had no record of [Hughes's] involvement regarding gang tattoos, and I believe that his testimony of 'no record' of defendant's gang involvement covered the issue." Dkt. No. 11-3 at 61.

Relatedly,

> "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." "To prevail ... the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."

*Nelson v. Davis*, 952 F.3d 651, 669 (5th Cir. 2020) (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)).

And, as pointed out in the state habeas proceeding, had Hughes's trial counsel called his mother to testify as to the timing of his gang involvement, that testimony would have established that Hughes was in fact, at least at one time, a gang member,

- 17 -

something that the prosecution's expert did not establish conclusively. So Hughes has not shown that this testimony would have been favorable and further has not shown that the CCA's denial of this IAC claim was unreasonable.

## Recommendation

The Court should deny both the request for an evidentiary hearing and the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 25, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE